LUCINDA J. HATCHETT, Appellant, v. LUKE M. EMERSON, Respondent.

St. Louis Court of Appeals, January 18, 1898.

1. Pleading: SETTLEMENT: FRAUD: EQUITY QUESTION. Where a petition contained two counts, the first to set aside a settlement between plaintiff and defendant, on an allegation of fraud, and the second for the recovery of the amount of the settlement, the former was addressed to the chancellor, and not to a jury, and the court should have heard the evidence, or submitted it to a jury upon issues properly framed, and there could be no recovery on the latter count as long as the settlement stood.

2. Tender: EQUITY PLEADING: RULE: EXCEPTION. It was not necessary that plaintiff should tender back the amount of settlement received, in order to maintain the first count of the petition. The rule of equity pleading that a party seeking to set aside a contract or settlement by which he has profited, should surrender such profit and place the other party *in statu quo* before asking a cancellation of the contract or settlement, does not require the party to give up that which is and was his own when received.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED AND REMANDED.

*Clark & Dempsey* and *J. D. Hostetter* for appellant.

The court erred in giving the instruction which precluded a recovery by plaintiff on the second count of the petition. *Taylor v. Short*, 38 Mo. App. 21; *Zwisler v. Storts*, 30 *Id.* 163; *Twopey v. Fruin*, 96 Mo. 104; *Charles v. Patch*, 87 *Id.* 450.

*Pearson & Pearson* for respondent.

Defendant's objection to the introduction of any testimony under the first count of the petition should have been sustained for the reason that the rescission of a contract for fraud must be exercised promptly, and disaffirmance must be *in toto*. *Estes v. Reynolds*, 75 Mo. 563; *Melton v. Smith*, 65 *Id.* 315; *Norton v. Bohart*, 105 *Id.* 615; *Taylor v. Short*, 107 *Id.* 384; *Cohn v. Reid*, 18 Mo. App. 115; *Commission Co. v. R'y*, 52 *Id.* 407.

The verdict of the jury was not responsive to the issue raised by the first count of the petition. The jury found damages, and the court entered up a money judgment. The verdict and judgment are a nullity, and should be set aside. *Mills v. Thompson*, 61 Mo. 415; *Ross v. Ross*, 81 *Id.* 84; *Reed v. Balt*, 100 *Id.* 62; *Newham v. Kenton*, 79 *Id.* 385-387; *Baldwin v. Whaley*, 78 *Id.* 186. See, also, R. S. 1889, sec. 2039; *Carter v. Shotwell*, 42 Mo. App. 663; *Link v. Vaughn*, 17 Mo. 585; *Beck v. Feward*, 18 *Id.* 30; *Duncan's Adm'r v. Fisher*, *Id.* 403.

BLAND, P. J.—This case is here by cross appeals and by separate transcripts and briefs; the cases have been consolidated by order of this court and will be treated as one case. The plaintiff was the owner of a jack named Triumph; with a view of selling him she wrote the defendant (who seems to have been a dealer

in that kind of property), the following letter, dated March 12, 1894:

"NEW FLORENCE, MO., March 12, 1894.

"*Mr. Emerson:*

"DEAR SIR: I have been looking for you to come over. You promised to do so as soon as your brother Luke returned. You remember you told Thos. Hatchett as soon after he got back as possible you would come, as yet I have not seen or heard one word from you. On what conditions can we sell Triumph to you? The large jack Mr. Hatchett bought last spring, it may suit you better to buy on time, that you can do, so we get a good note, it is all we require. Or if you would take them and sell for a stated per cent it would be satisfactory, and as you are headquarters for this class of stock, and are opposed to making an investment you won't object to giving instructions as to prices, will you? Please tell me what to hold them at, I am appealing to you because you have seen the stock and know just what can be done. Let me know at once whether to look for you or if it is your intention to take any further action in the matter. The young one Columbus is doing well, and making fine growth. You know the time is upon us to make some disposition of these animals, and I am unwilling as administratrix to keep them on my hands. I have no one to properly care for them. I am not disposed to annoy you by writing, but as I say I have waited and looked and all in vain for you to come or let hear, and no response, but trust to this appeal you will give your most earnest attention. The weather is fine, you can come any day.        Very truly,

"MRS. LOU. J. HATCHETT.

"P. S.—Mr. E. you know this is stock you can sell, for it was selected with great care and due consid-

eration. To the Mr. Emerson who called on us, and knows what I am referring to."

This letter was followed by the following additional correspondence between plaintiff and defendant:

"*Mrs. L. J. Hatchett, New Florence, Mo.*

"My Dear Madam:—Your favor of 16th received and in reply will say: If you send jack down to me and I can sell him for you will charge you $50.

"Yours very truly,
"Luke M. Emerson."

"New Florence, Mo., April 3rd, 1894.
"*Mr. Luke M. Emerson.*

"Dear Sir:—I have now an opportunity to put the jack out, but am resolved to make one more effort with you before doing so. It seems that you paid no attention to our last communication, which was only intended to put matters in a tangible shape that we might fully understand each other. I am sure I am not trying to get rid of an inferior animal. He is fine size, and the result of much time and expense to Mr. H. to make the purchase. He is indeed a valuable animal. Now I want to make a final proposition. Won't it suit you to take him off my hands at $550.00 (five hundred and fifty dollars)? If you will do so let me know right away and I will employ a man to take him over to you at once. Remember, Mr. Hatchett's expense is not included in the $990 we paid for him. I shall anxiously await a reply by return mail.

"Very respectfully,
"Mrs. L. J. Hatchett."

"Bowling Green, Mo., April 5, 1894.
"*Mrs. L. J. Hatchett.*

"Dear Madam:—Your letter received, in reply I will take your jack to sell for you and do the best I can,

but at your risk. If I can not get $550 for him he shall be at no expense to you; my opportunities are more numerous than probably yours to sell him.

"Very respectfully,
"LUKE M. EMERSON.

"Let me know if you intend selling him, and when I may be on the lookout for him. If you do send him, send him to George Emerson's stable and my men going up every day will bring him to my farm.
"L. M. E.

"I acknowledge receipt of your valuable favor of May 29th, and reply will say please do not feel uneasy as I am using my best efforts to get the money out of the jack.            Yours very respectfully,
"L. M. EMERSON."

On August 23, 1894, he wrote her as follows:

"BOWLING GREEN, MISSOURI, August 23, 1894.
"*Mrs. L. J. Hatchett, New Florence, Missouri.*

"DEAR MADAM:—I have sold your jack and am trying to sell the notes I took for him. I hold a mortgage on him so if they don't pay the money I will get the jack back in the spring, meanwhile if I can sell the notes we are all right and I will send you the money. Do not be uneasy, the bus. is just as safe in my hands as in your own and I will do right by you. The jack business has come nearly to a standstill and it is hard to tell just what the business will be, but I believe I would price young jack that you have at $300. If he is not worth that he.is not worth anything. It is hard to tell what your jennet is worth. Keep her awhile and see how things turn out, meanwhile it will pay to take good care of them. As soon as business livens up I will write you again and if I sell those notes will let you know.            "Respectfully,
"LUKE M. EMERSON."

On November 12, 1894, he wrote her the following letter.

"BOWLING GREEN, MISSOURI, November 12, 1894.

"*Mrs. L. J. Hatchett, New Florence, Missouri.*

"DEAR MADAM:—Your letter received during my absence is before me. Inclosed find note and check. This note of $475. I took for the jack I bought of you. It has the signature of these men, whom the Buffalo County National Bank, of Kearney, Neb., said in a letter to me· were perfectly good. I also inclose my check for $36.75, making $500, the price agreed upon. Hoping this will be satisfactory, I remain,

"Yours truly,

"LUKE M. EMERSON.

"Mr. Watson has indorsed the note on the back and the bank said he was absolutely ————. The credit of $11.75 on back of note is covered by my check."

The note and check mentioned in the letter were received by Mrs. Hatchett, and the check cashed. When the note matured Mrs. Hatchett sent it to Kearney, Nebraska, for collection, where it was duly protested for nonpayment and returned to her. It turned out that the makers and indorser were insolvent and the note proved to be worthless. On ————, 1895, Emerson wrote Mrs. Hatchett as follows:

. "BOWLING GREEN, MISSOURI, 512 3rd, 1895.

"*Mrs. Hatchett, New Florence, Mo.*

"DEAR MADAM:—I learned that your note on Clapp, Clintock Ross and Watson was not paid at maturity. I used my very best judgment in selling your jack. When I sold the jack I telegraphed the Buffalo County National Bank to know if they considered the note absolutely good and they replied that they did. I still think that the parties are responsible. A banker in Mass. told me that Watson was good.

They have had hard times out in Neb. but I think that they will pay up all right if they make a good crop there this year.        Resp'y yours,

"LUKE M. EMERSON."

Other letters were written by Emerson to Mrs. Hatchett after this, offering to assist her in the collection of the note and expressing his confidence in the solvency of Watson, the indorser, and his belief that the note could be collected. A number of Mrs. Hatchett's letters to Emerson were not produced by him, although he was notified by subpoena *duces tecum* to have them in court. Emerson at no time reported to Mrs. Hatchett the fact that he had sold her jack for $950, or that he had sold him under the name of "Don Carlos Jr." and had taken a mortgage to secure the sale notes. She testified that she never knew these facts until they were found out by her attorneys and communicated to her by them. The petition was in two counts; the first was in equity and asked that the settlement made between plaintiff and defendant on account of the sale of the jack be set aside for and on account of the fraudulent concealment of the facts of the sale by Emerson from her, whom she charged to be her agent for the sale of the jack for a commission of $50. The second count was for the recovery of the amount for which Emerson sold the jack, less his commission, and the amount paid by the check transmitted by his letter of November 12, 1894. The answer was a general denial of both counts. The case was tried by a jury on both counts of the petition and the answer; after the evidence was all in the court of its own motion instructed the jury as follows: "If the jury find from the evidence in the case that said Watson and Ross were insolvent at the time of the sale of the jack, and that said Clapp became insolvent prior to the second day of May, 1895, then the verdict should be for the plaintiff

on the first count of the petition, and the jury should assess the plaintiff's damages on said count at the sum of four hundred and sixty-three and 70-100. If the jury fail to find the fact as above stated the verdict should be for defendant on the second count." The jury returned a verdict for plaintiff on the first count of the petition for $463.50. From this judgment, after unsuccessful motions for new trial and one in arrest of judgment by defendant, both parties appealed to this court.

No money judgment was asked on the first count, and none could be rendered; the verdict was not responsive to any issue on the first count. *Ross v. Ross*, 81 Mo. 84; *Reed v. Bott*, 100 Mo. 62; *Newham v. Kenton*, 79 Mo. *loc. cit.* 385; *Baldwin v. Whaley*, 78 Mo. 186. Nor was there any issue of fact in the first count triable by a jury. It was purely a count in equity to set aside a settlement made by and between plaintiff and defendant for fraud, and was addressed to the chancellor, and not to a jury. On this count the court should have heard the evidence or submitted it to a jury upon issues properly framed, found from the correspondence between plaintiff and defendant, supplemented by the testimony of Thomas Hatchett what the contract was for the sale of the jack, and whether there had been a fraudulent concealment of the facts of the sale by Emerson by which Mrs. Hatchett had been misled and induced to accept the note of $475 and the check, and whether or not she had been injured thereby. There was ample evidence to sustain this count; the correspondence clearly shows that Emerson received the jack from Mrs. Hatchett to sell as her agent for a commission of $50. Whether the sale might be on time, is not so clear; or if made on

time, that Emerson should keep the sale notes and pay Mrs. Hatchett the cash, is not altogether clear. The preponderance of the evidence, however, seems that way, but we are not deciding this point. The facts must be passed upon by the chancellor, who may hear the evidence on a retrial.

It is contended that Mrs. Hatchett should have tendered back the money as well as the note in order to maintain the first count of her petition. It is a well settled rule in equity pleading that a party seeking to set aside a contract or settlement by which he has been profited at the expense of the other side, should surrender up such profit and place the other party *in statu quo* before asking a cancellation of the contract or settlement; but the rule does not require a party to give up that which is his own and was his own when received from the other party. According to the theory of both parties, the money received by Mrs. Hatchett from Emerson was and is her money; then why give it back to Emerson to be recovered back again in the suit? There can be no recovery on the second count as long as the settlement stands. If on a trial of the first count the issues are found for defendant, the settlement will be a complete bar to a recovery on the second count; but should the settlement be set aside, then there is in the record as presented here sufficient evidence to warrant a jury in finding every substantive averment in the second count in favor of the plaintiff, and on a retrial with the same evidence for the plaintiff, the jury should be allowed to take the case under proper instruction and return a verdict thereon. Both appeals are sustained and the judgment is reversed *in toto*. Judgment reversed and cause remanded.

All concur.

